NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
Trading Partners Collaboration, LLC, :
                                    :
         Plaintiff,                 :
                                    :       Civil Action No. 09-0823 (JAG)
         v.                         :
                                    :       **Opinion**
Michael Kantor, Promotion Optimization :
Institute, LLC,                      :
                                    :
         Defendants.                :
_____ :

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before this Court on the motion by plaintiff, Trading Partners Collaboration, LLC ("Plaintiff" or "TPC"), which seeks a preliminary injunction restraining defendants Michael Kantor and Promotion Optimization Institute, LLC ("POI") (collectively "Defendants") from (1) accessing, using, or disclosing any of TPC's trade secret, confidential, and/or proprietary business information; (2) soliciting or communicating in any way with any party or entity that is or has been an actual or prospective customer, member, and/or sponsor of TPC; (3) enjoining Michael Kantor from competing with TPC, including continuing to compete with TPC through POI; (4) enjoining POI from engaging in any business that competes with TPC; and (5) ordering Defendants to return to TPC any confidential, proprietary and/or trade secret information of TPC, including, but not limited to, customer, member and sponsorship lists (collectively referred to as "customer list"), including any copies thereof, pending the conclusion

1

of this lawsuit or further order of the Court.

## I. FACTS

TPC is a limited liability company, organized under the laws of the State of New Jersey, with its principal place of business located at 1055 Parsippany Blvd., Suite 201, Parsippany, New Jersey 07054. (Verified Complaint at ¶ 2.) TPC also maintains an office in South Plainfield, New Jersey. (Id. at ¶ 11.) The members of TPC are residents of Connecticut and Pennsylvania. (Id. at ¶ 3.) Defendant Michael Kantor is an individual residing at 27 Inwood Drive, Bardonia, New York 10954. (Id. at ¶ 4.) Upon information and belief, Defendant POI is a limited liability company organized under the laws of the State of Ohio. (Id. at ¶ 5.) Upon information and belief, POI is owned and operated exclusively by Michael Kantor. (Id. at ¶ 6.)

TPC is a membership organization and educational resource which fosters collaboration among trading partners who are engaged in the sale of consumer goods. (Id. at ¶ 13.) TPC provides services to its sponsors and members for trade promotion management and marketing in all its forms, with an emphasis on optimization, effectiveness, and collaboration. (Id.) TPC fosters, promotes, provides platforms for collaboration, and educational opportunities regarding the trading partner relationship. (Id.) Members of TPC are offered access to articles, newsletters, white papers, research, case studies, presentations, networks, webinars, and conferences regarding trade promotion issues. (Id. at ¶ 14.) TPC's members, customers, and sponsors generally consist of manufacturers and retailers of consumer goods who seeks to learn about and enter into collaborative relationships for the purpose of marketing and maximizing sales of a product, as well as service provided to manufacturers and retailers of consumer goods. (Id. at ¶ 15.)

Defendant Michael Kantor was employed by TPC as a Managing Director from approximately March 6, 2006, until November 7, 2008. (Id. at ¶ 16.) Upon information and belief, Kantor owns and operates POI. (Id.) Upon information and belief, POI is also a membership organization that was formed to, and has been engaged in, offering programs and publications to collaborating trading partners for the purpose of educating its members about trade promotion and merchandising, providing forums for collaboration and networking for practitioners of trade promotion merchandising. (Id. at ¶ 18.) Plaintiff asserts that POI's activities are in direct competition with the same goods and services provided by TPC. (Id.)

On or about March 6, 2006, Michael Kantor accepted an Offer of Employment ("the offer") with TPC as a Managing Director and signed TPC's Employee Confidentiality and Non-Competition Agreement ("the Agreement"). (Id. at ¶¶ 20-22.) The Agreement includes restrictions on competition with TPC and its affiliates, which includes, but is not limited to Trade Promotion Management Associates ("TPMA") and Vendor Compliance Federation ("VCF"). (Id. at ¶ 22.) The Agreement prohibits Kantor, for a period of two years subsequent to the termination of his employment with TPC, from engaging in numerous competitive activities, including the following: (a) engaging in a competing business; (b) soliciting customers and/or prospective customers of TPC; (c) possessing and/or using any confidential information of TPC[1];

---

[1] Under the Agreement, confidential information is defined as "all information acquired by Employee regarding the business and affairs of the Group or any of the Group's customers, employees, representatives, agents or consultants, including without limitation, the Group's customer lists, pricing policies, business plans, and operations, finances, books and records, instruments and reports, contracts, agreements, telephone and address lists or books, rolodexes, letters, trademarks, trade names, trade styles, service marks, service names, copyrights, trademark or copyright applications and registrations, all inventions, ideas, reports, and other creations and creative works (whether or not patentable or copyrightable), including, without limitation, advertising materials, designs, sketches, and art work together with all commercial and technical

(d) diverting customers and/or prospective customers of TPC to competitors; and (e) making any defamatory statements about TPC.  (Id. at ¶ 23.)

During his employment with TPC, Michael Kantor gained access to TPC's trade secrets and proprietary information, including, but not limited to, customer and member lists, pricing policies, business plans and operations, finances, contracts, address lists, services marks, copyrights, advertisements, drawings, data sheets, specifications, bills of material, sketches, calculations, reports, designs, software, and similar documents, processes, and proprietary information.  (Id. at ¶ 24.)

On or about November 7, 2008, Michael Kantor's employment with TPC was terminated for cause. (Id. at ¶ 25.)  Upon information and belief, Kantor is presently employed as the Executive Director for Defendant POI and he is the sole owner and operator of POI.  (Id. at ¶ 26.) While still employed with TPC, Kantor began engaging in activities for his personal benefit or for the benefit of a new industry organization (which has become POI), including, but not limited to, creating this new organization for the purpose of competing with TPC, soliciting TPC's sponsors and members to engage in business with his new organization; selling advertising for CPGmatters Magazine (a trade publication for the commercial packaged goods industry); and promoting his new organization to existing and potential customers of TPC.  (Id. at ¶ 27.)

After TPC conducted a forensic examination of Kantor's computer, it learned that while still employed with TPC, Kantor, exceeding his authorized use of the material, e-mailed copies of TPC's member list and other confidential and proprietary information to his personal e-mail

---

trade secrets, specifications, formula, technology computer and electronic data processing programs, software and related systems and procedures, processes and know how, as well as any other information designated by the Group as confidential." (Verified Complaint, Exh. B.)

4

account.  (Id. at ¶ 28.) Further, during his employment with TPC, Kantor allegedly made false and disparaging statements about TPC to TPC's current or prospective customers and industry experts, including that TPC was not making any monetary investment into the goods and services that it was providing to its members and that TPC did not have any interest in expanding the scope of the goods and services that TPC provides to its members.  (Id. at ¶ 29.)

Since his termination from TPC, Kantor, in direct violation of the Agreement, has continued to engage in activities to further POI's business and to compete with TPC.  (Id. at ¶ 30.)  Kantor's activities include, but are not limited to, contacting TPC's sponsors and members, and organizing conferences to market on behalf of consumer goods trading partners, particularly those focused in the area of trade promotion and merchandising, who seek to collaborate or learn about collaboration and whom are existing or potential customers and members of TPC.  (Id.)

TPC sent Kantor a letter, through its counsel, on or about November 7, 2008, after Kantor had been terminated, to remind him of his non-compete obligations, pursuant to the terms of the Agreement.  (Id. at ¶ 35.)  One month later, on December 11, 2008, TPC again through counsel, advised Kantor, in writing, that he was engaged in activities that directly violated the terms of the Agreement.  (Id. at ¶ 36.)  TPC requested that Kantor confirm, in writing, that he would abide by the terms of the Agreement.  (Id.)  TPC advised Kantor, by correspondence dated January 2, 2009, that he was violating the terms of the Agreement and demanded that he cease and desist from such activities.  (Id. at ¶ 37.)

On or about February 25, 2009, Plaintiff filed this Complaint against Michael Kantor and POI.  The Complaint is comprised of the following causes of action: violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (Count I); violation of the New Jersey Computer

Related Offenses Act, N.J. Stat. Ann. § 2A:38A-1 et seq. (Count II); Breach of Contract (the non-compete) (Count III); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV); Breach of the Duty of Loyalty (Count V); Tortious Interference with Contractual Relations (Count VI); Intentional Interference with Prospective Economic Advantage (Count VII); Defamation/Commercial Disparagement (Count VIII); and Misappropriation of Trade Secrets (Count IX).

## II. STANDARD OF REVIEW

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (citing Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)). Generally, in determining whether to grant a preliminary injunction or a temporary restraining order, courts consider four factors:

> (1) the likelihood that the applicant will prevail on the merits at final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). "[W]hile the burden rests upon the moving party to make [the first] two requisite showings, the district court" should look to factors three and four when relevant. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). "All four factors should favor preliminary relief before the injunction will issue." S & R Corp., 968 F.2d at 374 (citing Hoxworth, 903 F.2d at 192).

In order to prove irreparable harm, the moving party must "demonstrate potential harm

which cannot be redressed by a legal or an equitable remedy following a trial." Acierno, 40 F.3d at 653 (quoting Instant Air Freight Co., 882 F.2d at 801). "Economic loss does not constitute irreparable harm." Acierno, 40 F.3d at 653. "[T]he injury created by a failure to issue the requested injunction must "'be of a peculiar nature, so that compensation in money cannot atone for it.'" The word irreparable connotes "'that which cannot be repaired, retrieved, put down again [or] atoned for.'"" Id. (internal citations omitted). In addition, the claimed injury cannot merely be possible, speculative or remote. Id. at 655. "More than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'" Id. (quoting Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358 (3d Cir. 1980)).

### III. ANALYSIS

The crux of Plaintiff's action is its breach of contract claim. Plaintiff seeks the issuance of a temporary restraining order enjoining Defendant from the ongoing breach of its contract with Plaintiff. In order to recover, Plaintiff must show a reasonable probability of success on the merits and immediate irreparable harm.[2]

**(1)  Plaintiff's Breach of Contract Claim**

Under New Jersey law, "to establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his

---

[2] This Court notes that the factors the Third Circuit requires this Court to weigh in order to determine whether it must grant injunctive relief are conjunctive. If this Court finds that Plaintiff fails on any one of the factors enumerated by the Third Circuit, the need to address the remaining factors is obviated.

obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).

      **a)**      **Non-Compete Agreement**

Both parties concede that Kantor and TPC entered into the Agreement–a confidentiality and non-compete agreement. Plaintiff alleges that Defendant Kantor breached the Agreement when he became involved in a competing business, namely, POI, and by his use of and disclosure of trade secret and confidential and/or proprietary information belonging to TPC. Defendants argue that the Agreement is unenforceable because it is overly broad and represents an unreasonable restraint on Kantor's ability to secure employment.

The Agreement restricts Kantor's post-employment activities. Section 1(a) of the Agreement provides, "Employee shall not directly or indirectly, assist in, have any financial interest in, or participate in any way in, as an owner, partner, employee, agent, board member or shareholder, any business that involves, in whole or in part, activities competitive with the business heretofore now or hereafter carried on by the Group in any state in the U.S.A. in which the Group has conducted business during the period of two years prior to the date of such termination." (Verified Complaint, Exh. B.)[3]

The Agreement also restricts Kantor's contact with former customers of TPC. Paragraph 1(b) of the Agreement provides, "Employee shall not (I) initiate contact directly or indirectly, with or (ii) accept any business from, in both cases, any customers or prospects from the Group

---

[3] As defined in the Agreement, the "Group" includes, but is not limited to, Trading Partners Collaboration, LLC, and its affiliates–Vendor Compliance Federation Worldwide, Smyth Groups Services, Bernard Sands, Leib Recovery Solutions, Smyth Solutions, Smyth Trade Credit, and Debtwatcher, Inc. (Verified Complaint, Exh. B.)

with which the Group has done business or conducted sales discussions during the preceding twelve months prior to the date of termination, or attempt to induce any person or company to cancel or curtail their business with the Group." (Id.)

"It is settled law in New Jersey that restrictive covenants are valid in appropriate circumstances." Scholastic Funding Group, LLC v. Kimble, et al., 2007 WL 1231795 at *4 (D.N.J. 2007). A non-compete covenant will be "given effect if it is reasonable in view of all the circumstances of the particular case. It will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Solari Industries, Inc. v. Malady, 264 A.2d 53, 56 (N.J. 1970). "Beyond that, three additional factors should be considered in determining whether the restrictive covenant is overbroad: its duration, geographic limits, and the scope of the activities prohibited. Each of those factors must be narrowly tailored to ensure the covenant is no broader than necessary to protect the employer's interest." The Community Hosp. Group, Inc. v. Moore, 869 A.2d 884, 897 (N.J. 2005).

This Court finds that TPC has a legitimate interest in protecting its trade secrets, customer lists, and other proprietary information and insofar as the non-compete prevents Defendants from disclosing such information or engaging in direct competition with Plaintiff, the Agreement satisfies the first prong of the test established by the New Jersey Supreme Court.

Defendant argues that the Agreement is overly broad because it restricts Kantor from working in any state that Plaintiff and its several affiliated companies are doing business, and presumably could apply to all 50 states. In addition, the Agreement restricts Kantor from participating in any business competitive with TPC or its affiliates "heretofore now or hereafter

9

carried on by the Group." (Verified Complaint, Exh. B.) Under the Agreement, Kantor would be required to anticipate which business activities TPC and its affiliates intend to engage in so as not to run afoul of its provisions.

Defendant Kantor states that he met with John Metzger to discuss his new venture (POI) on December 31, 2008 to ensure that he did not run afoul of the Agreement. (Kantor Cert. at ¶ 18.)[4] Kantor showed Metzger a draft of an article that Kantor wrote for publication in the GMA-forum, which he (Kantor) states is the official publication of the Grocery Manufacturers Association. (Id. at ¶ 17.) In the article, Kantor described his idea for a post-graduate education or new educational credential for collaborative marketing. (Id.) Kantor's idea entailed a collaboration between POI and several food universities to offer a new certification program centered on trade marketing and merchandising and would provide a certification as a Certified Collaborative Marketer. (Id.) During the meeting, Kantor shared his idea with Metzger who told him that he had never conceived of such an idea. (Id. at ¶ 19.) Metzger told Defendant that his idea was something that TPMA could be interested in pursuing in the future. (Id.)

Three days later, on January 3, 2009, TPMA changed its website to reflect that it was also a think tank and educational resource for consumer goods trading partners. (Id. at ¶ 21.) Before the change, TPMA marketed itself as an organization dedicated to trade promotion professionals. (Id.) During oral argument, Plaintiff acknowledged that its website changed shortly after Metzger learned of Kantor's plans. (Tr. March 16, 2009 at 4:14-18.) As the Agreement is presently drafted, Kantor could conceivably enter into a business or profession that is not

---

[4] John Metzger is the owner of Trade Promotion Management Association. (Kantor Cert. at ¶ 6.) Metzger is responsible for hiring Kantor. (Id. at ¶ 7.) Metzger possessed the authority to fire Kantor at will. (Id. at ¶ 8.)

currently competing with Plaintiff's business or its affiliates only to find that months later, TPC or one of its affiliates has changed their business plan to encompass Defendant's chosen arena of employment. The change in Plaintiff's website only three days after Defendant shared his business plans with Metzger is precisely the kind of change in business activities by Plaintiff that might cause Defendant to be in violation of the Agreement without being able to anticipate such violation. The Agreement, by its very terms, places no limit on the activities that Plaintiff may restrict because restricted activities may be changed at anytime.

This Court finds that the geographical restrictions of the Agreement and the scope (or lack thereof) of the activities restricted, pursuant to the Agreement, place an undue burden on the Defendant. The Agreement is unenforceable as it pertains to restrictions on Defendant's employment activities and the geographic limitations placed on Defendant's employment.

Since this Court has determined that the Agreement is unenforceable due to its over-breadth in geographic terms, as well as the scope of the activities prohibited, this Court must also find that the Plaintiff is unlikely to prevail on the merits of its claim for breach of the non-compete agreement.

**(2)    Computer Fraud and Abuse Act Claim**

This Court must also assess the likelihood of Plaintiff's success in showing that its has a reasonable probability of success against Defendants on its Computer Fraud and Abuse Act claim.

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (CFAA) provides a private right of action for losses incurred due to violations of the Act. See P.C. Yonkers, Inc. v. Celebrations: The Party and Seasonal Superstore, LLC, 428 F.3d 504, 510-511 (3d Cir. 2005).

Specifically, 18 U.S.C. § 1030(g) provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." Id. at 510.

Plaintiff alleges that Defendant used its computers to e-mail to his personal e-mail account copies of TPC's member list and "other confidential proprietary information." (Verified Complaint at ¶ 28.) Plaintiff seeks relief under § 1030(a)(2)(c), which imposes liability upon any person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from a protected computer." Plaintiff's computers are protected within the meaning of the statute because they are used in interstate commerce. See Shurgard Centers, LLC v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1124 (W.D. Wash. 2000) (A "protected computer" means "a computer which is used in interstate commerce or foreign commerce or communication.").

Defendant disputes Plaintiff's claim that he has misappropriated confidential proprietary information. Defendant avers that "Plaintiff does not have a customer list. What it has is about five paying customers, no pricing policy, and no confidential business plans. All the information on its clients is available to the public on their website, (www.vcfww.com), as well as their competitors' websites, in great detail." (Kantor Cert. at ¶ 34.)

In order to support his contention that Plaintiff's customer lists are public, Defendant directs this Court to the VCF/TPMA Exhibit and Sponsorship Opportunities Guide 2008 (the "Guide"), which lists many of Plaintiff's members. (Kantor Cert., Exh. F.) A review of screen shots of web pages taken from Plaintiff's website, as of January 3, 2009, also indicates that many of Plaintiff's sponsors are publicly known since they appear on Plaintiff's website. (Id. at Exh.

G.) Plaintiff is a membership organization and has provided an extensive list of its members to the public. This list is available in Plaintiff's promotional material such as in the Guide, and is also available on its website. This material is widely available in the public domain. The evidence offered by Defendant reveals that Plaintiff has touted its members publicly as well as its sponsors, which contradicts Plaintiff's argument that its customer list is confidential. Plaintiff has not offered any evidence to this Court to show that Defendant misappropriated any confidential information.

This Court finds that Plaintiff is not likely to succeed on the merits of its Computer Fraud and Abuse Act claim because the Plaintiff has not demonstrated that Defendant misappropriated any confidential or proprietary information.

**(3)    New Jersey Computer Related Offenses Act Claim**

This Court must assess the likelihood of Plaintiff's success in showing that it has a reasonable probability of success against Defendants on its claim for relief under the New Jersey Computer Related Offenses Act.

The New Jersey Computer Related Offenses Act, N.J. Stat Ann. § 2A:38A-3, provides that "A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefor in the Superior Court and may recover compensatory and punitive damages as the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation: a. The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network...." Id.

"The Computer Act imposes liability against an "actor" whose "purposeful or knowing" conduct is proscribed by the statute." Fairway Dodge, L.L.C. v. Decker Dodge, Inc., 924 A.2d 517, 522 (N.J. 2007). Although the term actor is not defined within the act, "[e]ach subsection of N.J.S.A. [§] 2A:38A-3 is independent of the other and each subsection requires that the conduct by the actor be 'purposeful or knowing'". Id. at 523.

Plaintiff states that Defendant, while an employee of TPMA, e-mailed confidential information to himself including customer lists, customer contact information, pricing information, and information pertaining to Plaintiff's customers' current payment status. (Tr. March 16, 2009 at 27:15-25 - 28:1.) Plaintiff refers this Court to Exhibits C and D, attached to Plaintiff's reply brief, which do not prove conclusively that Defendant took any confidential data without authorization. (Tr. March 16, 2009 at 27:18, Plaintiff's Reply Brief, Exhibits C and D.) Plaintiff has not offered sufficient evidence to support a finding that Defendant knowingly or purposefully took, without authorization, data from Plaintiff's computer while he was an employee of Defendant. Defendant Kantor has stated that he is not in possession of any confidential information from Plaintiff such as customer lists or pricing information, but has agreed to turn over any confidential information that he may have in his possession. (Tr. March 16, 2009 at 28:19-22.)

This Court finds that Plaintiff is not likely to succeed on the merits of its New Jersey Computer Related Offenses claim.

**(4) Misappropriation of Trade Secrets**

This Court must assess the likelihood of Plaintiff's success in showing that its has a reasonable probability of success against Defendants on its claim for misappropriation of trade

secrets.

"A trade secret claim in the federal courts is governed not by federal common law but by state law. This is true regardless of whether jurisdiction is based upon diversity of citizenship." Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429 (3d Cir. 1982). New Jersey law applies in this case because the Agreement between Kantor and Plaintiff contains a choice of law provision designating New Jersey as the forum state for the resolution of claims. The Agreement states that it "shall be construed and enforced in accordance with the laws of the state of New Jersey, without regard to its conflict of laws principles." (Verified Complaint, Exh. B at ¶ 11.)

The basic elements of a trade secrets claim under New Jersey law are: (1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff. Rohm and Haas Co., 689 F.2d at 429-30.

New Jersey Courts have held that trade secrets include customer lists and information relating to merchandising, costs and pricing. "In New Jersey, customer lists of service businesses have been afforded protection as trade secrets." Lamorte Burns and Co., Inc. v. Walters, 770 A.2d 1158, 1166 (N.J. 2001) (citations omitted).

Plaintiff's customer lists and pricing information constitute trade secrets under New Jersey law. Plaintiff claims that Defendant gained access to its trade secrets while he was an employee of TPMA. Defendant acknowledges gaining access to Plaintiff's trade secrets but denies breaching Plaintiff's confidence by disclosing the information to third parties, or more specifically to POI, in order to compete with Plaintiff. Defendants maintain that Plaintiff's

15

customer lists and pricing information are available to the public, and Defendants deny using this information to compete with Plaintiff.  Defendants maintain that POI is not in competition with Plaintiff and that in any event Plaintiff is not in possession of any of Plaintiff's confidential information.

This Court finds that Plaintiff's has not offered sufficient evidence for this Court to find in its favor on its claim for misappropriation of trade secrets.  Plaintiff has not offered any evidence that would show that Defendant has conveyed its trade secrets to any third parties.  Based on the evidence provided to this Court, Plaintiff cannot demonstrate that Defendant misappropriated its trade secrets nor has Plaintiff shown that the information has been acquired by a competitor of Plaintiff.

This Court finds that Plaintiff is not likely to succeed on its claim for misappropriation of trade secrets.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion seeking a temporary restraining order on its claims of breach of contract, violations of the Computer Fraud and Abuse Act, violation of the New Jersey Computer Related Offenses Act and for misappropriation of trade secrets, is denied.

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated:  June 8, 2009